UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-20674-CR-GAYLES(s)

UNITED STATES OF AMERICA

vs.

KADIR DIAZ,

        Defendant.
_____/

## FACTUAL PROFFER

The United States of America and the defendant, Kadir Diaz, (Diaz) hereby stipulate and agree to the following facts, which serve as the factual basis for Diaz's guilty plea to Counts 2 and 3 of the Superseding Indictment.:

1. As of early 2013, Diaz had been introduced into the pharmaceutical diversion business by co-defendant Frank Alvarez and others. This business involves the illegal purchase and sale of prescription pharmaceuticals, primarily drugs for treatment of HIV, cancer, and psychiatric illnesses. The medicines are bought from patients to whom they are prescribed but who forgo their use and instead choose to sell them. The diverted drugs are then aggregated, cleaned, packaged, and re-sold, with fraudulent documentation purporting them to have been supplied directly from manufacturers or from legitimate pharmaceutical wholesalers. Part of the scheme involves the creation of false "pedigrees", which are documents that are legally required to show the origin and all sales and transfers of prescription pharmaceuticals.

2. For several months in 2013, Diaz and co-conspirators participated in diversion

operations at successive locations in the area of South Miami. Those locations included apartments and a house. Diaz, along with others, processed diverted drugs by cleaning medicine bottles with lighter fluid or other chemicals to remove glue residue, checked them for appearance and noticeable signs of tampering, weighed them, and packed quantities of bottles into boxes for shipping.

3. Diaz continued cleaning, checking, and packing the drugs through 2013 and 2014. He often picked up boxes of drugs to be cleaned and packed from unidentified individuals he met with information he was provided by Frank Alvarez. Diaz understood that the medicines they were dealing in had been bought on the street from patients to whom they had been prescribed. He usually picked up boxes containing hundreds of bottles of medicine at a time.

4. Co-defendant Mohammad Salemi operated licensed pharmaceutical wholesale companies. Salemi arranged the sales of the diverted drugs processed by Diaz and Alvarez, and co-defendant Joshua Joles was Salemi's principle customer. When a shipment of drugs was ready for shipment, Alvarez provided Salemi and Joles with information on the number of boxes they had to ship, and Salemi or Joles then provided address labels by e-mail drafts, which Diaz printed out and then deleted. Most of the boxes were taken to the Federal Express store near Miami International Airport and shipped from Miami to Joles' company in Arizona. Through 2014, Diaz worked with co-conspirators to process and ship thousands of bottles of diverted prescription medicines to the co-conspirators who operated pharmaceutical wholesale companies.

5. Around the end of 2013, Diaz met co-defendant Mohammad Salemi in person, on a trip to Puerto Rico. He and Alvarez resided in Salemi's apartment. Salemi at that time owned a licensed pharmaceutical wholesaler in Puerto Rico, Drogueria Bayamon, which he used, along

with another such company, to sell the diverted pharmaceuticals processed by Diaz to Joles' company in Arizona.

6. Defendant Jorge Paiz acquired the Puerto Rico based licensed pharmaceutical company Drogueria Las Rosas in October, 2014, and continued operating it for a period of time, purchasing and selling diverted drugs. Early in 2016 Paiz sold the company to Diaz. Diaz received guidance from Frank Alvarez in how to set himself up in the business. Diaz travelled to Puerto Rico to establish himself in the company, opened corporate bank accounts, and began selling diverted drugs through Drogueria Las Rosas Corporation.

7. Diaz was supplied with diverted drugs by Frank Alvarez and by another conspirator, and his principle customer was LLC Wholesale Supply LLC in Tempe, Arizona, run by Joshua Joles. In early 2015, co-defendant Carlos Gonzalez started working with Diaz. During this time period their operation was based in a condominium on the Miami River near Northwest 12 Street in Miami. Their work included cleaning and packaging bottles and entering lot numbers from the bottles and onto bogus pedigrees. The formats for the pedigrees had been provided to Diaz on a flash drive given to them by Paiz.

8. Diaz and his co-conspirators continued their operations in that apartment for approximately six months in 2015-2016. Early during that time period, Joles frequently rejected orders they shipped to him. Joles complained of mis-matched lot numbers, erroneous bottle counts, and other discrepancies in the pedigrees and invoices. Over time, Diaz was able to improve this disorder in his paperwork.

9. When Joles accepted a shipment, he wire-transferred the purchase money to Diaz's Drogueria Las Rosas accounts. Alvarez provided information to Diaz to wire-transfer proceeds

3

from his sales to cover the costs of the purchases. None of the accounts receiving the funds belonged to actual legal pharmaceutical distributors, but were held by shell companies that often copied the names of other, legitimate business corporations.

10. Diaz knew at the time that the wire-transfers of these funds through bank accounts in different states were conducted to allow the proceeds from sales of diverted drugs to be converted into cash, which was used to purchase additional drugs for sale through the same diversion network. In addition, Diaz knew that the use of shell companies to receive and transfer proceeds was designed to conceal the identities of the persons who controlled the funds and owned the profits from their fraudulent activity.

11. During the course of operating Drogueria Las Rosas, Diaz received approximately $21 million in gross sale proceeds, and transferred an equivalent amount out of his accounts to continue his business of selling diverted drugs.

_____
KABIR DIAZ
DEFENDANT

_____
DAVID GARVIN
DEFENSE COUNSEL

_____
FRANK H. TAMEN
ASSISTANT U.S. ATTORNEY

5·21·2020
DATE

4